**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1527
_____

UNITED STATES OF AMERICA

v.

HERMENEJILDO FUENTES-MARICHE,
a/k/a
PABLO DEJESUS SANTANA-BAHAMUNDI

Hermenejildo Fuentes-Mariche,

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-12-cr-00205-001)
District Judge: Hon. Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2013
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: October 16, 2013)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

Appellant Hermenejildo Fuentes-Mariche, a citizen of Mexico, pled guilty to one count of illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(1). He now appeals his thirty-month sentence of imprisonment, claiming that the District Court improperly relied upon a prior conviction to enhance his advisory Guidelines range, failed to consider a sentencing disparity, and imposed a substantively unreasonable sentence. For the reasons set forth herein, none of these claims has merit and we will affirm.

**I.**

As we write primarily for the benefit of the parties, we recite only the essential facts concerning Fuentes-Mariche's contact with the criminal justice system and his sentencing in this case. On June 17, 2004, Fuentes-Mariche was convicted in the York County Court of Common Pleas of resisting arrest in violation of 18 Pa. Cons. Stat. Ann. § 5104 and was sentenced to an eighteen-month term of probation. He subsequently returned to his home country. During a one-month period in 2006, United States border patrol agents apprehended him near the United States-Mexico border on three separate occasions, and he was ordered deported and removed to Mexico each time.[1]

Fuentes-Mariche reentered the United States for a fourth time sometime before June 26, 2012. Immigration agents encountered him at York County Prison, where he

---

[1] On April 14, 2006, border patrol agents encountered Fuentes-Mariche near Sells, Arizona, and detained him on suspicion of illegal entry into the country. An Immigration Judge issued an order of removal on April 19, 2006, and Fuentes-Mariche was physically removed to Mexico the same day. On April 27, 2006, border patrol agents again encountered Fuentes-Mariche, this time near Nogales, Arizona. The previous deportation order was reinstated and he was removed to Mexico. Less than a week later, on May 4, 2006, border patrol agents again apprehended Fuentes-Mariche in the United States, and he was physically removed for the third time the next day.

was detained on criminal charges of unsworn certification to law enforcement, presenting false identification to law enforcement, and driving without a license. On August 8, 2012, a federal grand jury returned an indictment charging Fuentes-Mariche with a single count of illegal reentry by a deported alien after having been convicted of a felony offense, in violation of 8 U.S.C. § 1326(a) and (b)(1). Fuentes-Mariche pled guilty pursuant to a written plea agreement.

At sentencing, Fuentes-Mariche contended, among other things, that he should not receive an increase in his base offense calculation pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because he did not have a prior felony conviction for a crime of violence. He argued that his state court conviction for resisting arrest was merely a misdemeanor under Pennsylvania state law for which he was only sentenced to probation. He also argued that the resulting Guidelines range caused a sentencing disparity between him and other defendants who committed the same underlying conduct. In particular, Fuentes-Mariche noted that another individual who was convicted under section 1326 but whose prior felony conviction was for negligent homicide received a significantly shorter sentence.

The District Court found that a sixteen-level increase to Fuentes-Mariche's base offense level applied due to his prior felony conviction for a crime of violence, but that he was entitled to a three-level reduction of the offense level for his acceptance of responsibility, resulting in an offense level of 21 and a criminal history category of I. That calculation resulted in an advisory Guidelines sentencing range of 37 to 46 months. The District Court agreed with Fuentes-Mariche that a disparity existed between his sentence and other defendants who had committed the same immigration crime and

3

granted a downward variance under 18 U.S.C. § 3553(a)(6). Fuentes-Mariche was sentenced to 30 months of imprisonment and one year of supervised release.

Fuentes-Mariche argues on appeal that the District Court committed error by: (1) concluding that he had a prior felony conviction without sufficiently explaining its reasoning, (2) failing to consider the sentencing disparity argued by Fuentes-Mariche, and (3) imposing a substantively unreasonable sentence.

**II.**

We review sentences under the deferential "abuse of discretion" standard. Gall v. United States, 552 U.S. 38, 56 (2007); United States v. Wise, 515 F.3d 207, 217 (3d Cir. 2008). We exercise plenary review of the District Court's interpretation of the Guidelines. United States v. Kennedy, 554 F.3d 415, 418 (3d Cir. 2009). We review any factual findings that support a sentencing determination for clear error.[2] Id. We review the District Court's "application of the Guidelines to the facts for abuse of discretion[.]" United States v. Blackmon, 557 F.3d 113, 118 (3d Cir. 2009). Where, as here, a defendant asserts a procedural error and challenges the substantive reasonableness of his sentence, we examine the sentencing procedure first,[3] and "[i]f we determine that the

---

[2] "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (alterations and citations omitted).

[3] We have established a three-step process for sentencing:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before [United States v. Booker, 543 U.S. 220, 246 (2005)].

district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence under an abuse-of-discretion standard." Wise, 515 F.3d at 218.

Fuentes-Mariche raises two procedural challenges to the sentence: the enhancement of the base offense level based on his prior conviction and a purported failure to consider sentencing disparities when considering his motion for a variance. Neither argument has merit. First, our precedent clearly establishes that a conviction for resisting arrest under Pennsylvania law is a conviction for a felony that is a crime of violence under the Guidelines.[4] United States v. Stinson, 592 F.3d 460, 465-66 (3d Cir.

---

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
> (3) Finally, they are required to exercise their discretion by considering the relevant section 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (alterations, internal quotation marks, and citations omitted).

[4] The enhancement specifically applies to a conviction for a felony that is a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii). Under the advisory Sentencing Guidelines, a felony is an "offense punishable by imprisonment for a term exceeding one year." Id. at cmt. n.2. Fuentes-Mariche faced up to two years' imprisonment for his violation of the Pennsylvania statute. 18 Pa. Cons. Stat. Ann. § 1104(2). Thus, regardless of the misdemeanor label it is given under the Pennsylvania law or the fact that he was sentenced to probation, his conviction for violating the Pennsylvania statute constitutes a felony conviction under the Guidelines. See United States v. Hernandez-Garduno, 460 F.3d 1287, 1293 (10th Cir. 2006) (explaining that the word "punishable" clarifies that the definition of felony turns on the maximum sentence that could result from a conviction for the offense, "irrespective of the actual sentence imposed"). The crime at issue, resisting arrest, falls within the definition of a "crime of violence" under U.S.S.G.

5

2010) (concluding that resisting arrest is a crime of violence for purposes of section 4B1.2 of the Guidelines because it involves use of force that poses a risk of injury to another). The District Court considered Fuentes-Mariche's arguments about his specific case—that he did not act violently and that he was not sentenced to prison—but it explained that it was bound by Stinson and appropriately found his arguments unavailing.

Second, the record demonstrates that the District Court considered—and in fact granted—Fuentes-Mariche's motion for a downward variance based on sentencing disparities. Fuentes-Mariche complains that the District Court did not adequately explain why it did not vary even further from the Guidelines range. To the contrary, the District Court clearly explained that it found a disparity to exist and imposed a sentence that balanced its desire to avoid the sentencing disparity against the nature of the offense and the fact that Fuentes-Mariche had illegally reentered the United States three other times. See 18 U.S.C. § 3553(a)(1) (directing sentencing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant"). The District Court therefore adequately addressed Fuentes-Mariche's arguments and explained its reasoning. See United States v. Jackson, 467 F.3d 834, 842 (3d Cir. 2006) (holding that "[w]hat matters is that the Court specifically addressed [the defendant's]

§ 4B1.2. Stinson, 592 F.3d at 465. The definition of the term "crime of violence" as set forth in section 4B1.2, which was at issue in Stinson, is virtually identical to the definition set forth in section 2L1.2. Compare U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (A crime of violence includes any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another.") with § 4B1.2 cmt. n.1 (same).

6

non-frivolous arguments and that it did so in a way that allows us to review the sentence for reasonableness").

Having concluded that the District Court committed no procedural error, we examine the substantive reasonableness of the sentence. We will affirm the sentence imposed "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). In arguing unreasonableness, Fuentes-Mariche raises the same two arguments he raised concerning the District Court's sentencing procedures: that he did not commit a violent felony and the disparate nature of his sentence. We have already explained that resisting arrest is a categorical crime of violence, Stinson, 592 F.3d at 466-67, and his conviction for that offense supported the sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A). Moreover, the District Court did not abuse its discretion in declining to vary further in light of Fuentes-Mariche's criminal history and repeated illegal reentry into this country. We conclude that "[b]ecause this sentence 'falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm.'" United States v. Lopez-Reyes, 589 F.3d 667, 673 (3d Cir. 2009) (quoting Wise, 515 F.3d at 218).[5]

---

[5] Fuentes-Mariche also complains that his sentence was greater than necessary because the District Court sentenced him "to 30 months in jail for a totally non-violent offense." Appellant Br. 22. As we have previously explained, "[t]he applicable Guidelines range here is not rendered unreasonable simply because § 2L1.2 establishes a base offense level for a nonviolent offense that is equal or greater than that of certain violent offenses." Lopez-Reyes, 589 F.3d at 672.

**III.**

For the foregoing reasons, we will affirm the judgment of sentence.