United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 29, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————

No. 03-30004

————

UNITED STATES OF AMERICA,

Plaintiff — Appellee,

versus

SAMUEL LEE; JACKLEAN DAVIS,

Defendants — Appellants.

--------------------
Appeals from the United States District Court
for the Eastern District of Louisiana
02-CR-60-1-H
--------------------

Before JONES, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This case arises out of an off-duty police detail of New Orleans Police Department ("NOPD")

officers at a promotional event hosted by BigPros, Inc. ("BigPros"), a Florida corporation. Appellant

Samuel Lee ("Lee"), a former lieutenant with the NOPD, arranged the security detail. Appellant

Jacklean Davis ("Davis"), a former sergeant with the NOPD, was the detail coordinator at the event.

At trial, the Government presented evidence that, following the event, Lee and Davis demanded

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

1

additional payment from the event promoters and threatened them with arrest if they refused to pay. Lee and Davis were convicted of conspiracy to extort and extortion. They were sentenced under United States Sentencing Guideline ("U.S.S.G.") § 2B3.2, Extortion by Force or Threat of Injury or Serious Damage.

Following their convictions, the prosecutor disclosed that government witness Tim Crockett ("Crockett"), one of the BigPros partners, had an outstanding arrest warrant pending against him at the time of trial for issuing a worthless check. Based upon this post-trial disclosure, Lee and Davis filed motions for judgment of acquittal and motions for a new trial. After an evidentiary hearing, the district court denied the motions. Lee and Davis timely appealed.

Lee raises four arguments on appeal: (1) the evidence presented at trial was insufficient to convict him of extortion because the government did not show his conduct was "wrongful" within the meaning of the Hobbs Act, 18 U.S.C. § 1951; (2) the district court erred by not granting his motion for a new trial because the government's failure to disclose Crockett's outstanding arrest warrant violated Brady v. Maryland, 373 U.S. 83 (1963); (3) the district court erred in not granting his motion for a new trial based on the prosecutor's comments during closing arguments; and (4) the district court erred in applying U.S.S.G. § 2B3.2, Extortion by Force or Threat of Injury or Serious Damage, rather than U.S.S.G. § 2C1.1, Extortion Under Color of Official Right. Davis appeals only the Brady v. Maryland claim. For the reasons set forth below, we affirm.

I.      *Sufficiency of Evidence*

Lee contends that his conviction for extortion was not supported by evidence sufficient to prove that his action was "wrongful" as required by the Hobbs Act, 18 U.S.C. § 1951.

In reviewing a sufficiency claim, we "must view all evidence and make all inferences drawn

2

from that evidence in the light most favorable to the prosecution to determine whether a reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt." United States v. Wharton, 320 F.3d 526, 536 (5th Cir. 2003).

To convict under the Hobbs Act, the government must prove, *inter alia*, that the payment was "wrongful." United States v. Quinn, 514 F.2d 1250, 1256 (5th Cir. 1975). That is, "that the alleged extortionist had no lawful claim to the property." Id. Although the Hobbs Act does not condemn the use of coercive tactics to obtain increased wages when the payment is gained in furtherance of legitimate labor objectives, "the Act does proscribe the use of coercive means to exact personal payoffs or to obtain 'wages' for unwanted or superfluous services." Id. at 1257.

At trial, the government presented evidence to show that, by threatening the event promoters with arrest if they refused to pay, Lee and Davis extorted more money from BigPros than legitimately owed. The jury reached this conclusion after hearing conflicting testimony as to the rates charged by Lee for the detail. The jury necessarily made credibility determinations, a quintessential role of a jury. The jury's verdict is amply supported by evidence in the record. There was sufficient evidence for the jury to reasonably conclude Lee had no legitimate claim to the amount of money demanded under threat of arrest.

## II.     *Brady Claim*

Lee and Davis both assert that the government violated Brady v. Maryland, 373 U.S. 83 (1963), by not disclosing Crockett's outstanding arrest warrant for issuing a worthless check in the amount of $12,500 to a vendor. The district court denied Brady relief because the evidence was inadmissible and immaterial.

We review Brady determinations *de novo*. United States v. Green, 46 F.3d 461, 464 (5th Cir.

3

1995).  The Brady rule encompasses impeachment evidence as well as exculpatory evidence. U.S. v. Bagley, 473 U.S. 667, 676 (1985).  "The suppressed information, however, must still be 'evidence' that is 'material either to guilt or to punishment.'" Felder v. Johnson, 180 F.3d 206, 212 (5th Cir. 1999) (citing Brady, 373 U.S. at 87).  Evidence is "material" if there is a "reasonable probability" that the outcome at trial would have been different had the evidence been disclosed to the defendant. United States v. Freeman, 164 F.3d 243, 248 (5th Cir. 1999).  A "reasonable probability" is one "sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682.

The crux of Appellants' Brady argument is that disclosure of the arrest warrant would have led them to discover other outstanding civil proceedings and judgements against Crockett and BigPros for failure to pay debts incurred.  The factual circumstances surrounding the warrant and the civil complaints, therefore, could have been used to impeach the testimony of the BigPros partners.

"[I]nadmissible evidence may be material under Brady." Spence v. Johnson, 80 F.3d 989, 1005 n.14 (5th Cir. 1996).  The key is "whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different." Felder, 180 F.3d at 212.

Even assuming that the factual circumstances surrounding the warrant and the civil complaints could have been used to impeach the testimony of the BigPros partners, there was sufficient corroborating evidence to support the jury's verdict.  Appellants have not shown a reasonable probability that the outcome of the trial would have been different had the evidence of Crockett's arrest warrant been disclosed.[1]

---

[1] Furthermore, the government has no obligation to conduct a defendant's investigation for him. See United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990).  "[W]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and

*III.    Motion for New Trial*

We review a district court's denial of a motion for a new trial for abuse of discretion when the motion is based on prejudicial remarks made by the government during closing argument. United States v. Jefferson, 258 F.3d 405, 412 (5th Cir. 2001).   In determining whether prosecutorial misconduct constitutes reversible error, "[w]e consider three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." United States v. Hernandez-Guevara, 162 F.3d 863, 874 (5th Cir. 1998).

Here, Lee alleges that the display of a police officer's badge during rebuttal argument and a reference to the recent death of a NOPD officer served to improperly prejudice the jury.[2]  Lee objected during the rebuttal argument at trial, and the trial judge sustained the objection.  Appellants did not request a curative instruction, and the judge did not give one because he "thought the jury understood [the court's] reason for sustaining the objection."   The judge did instruct the jury, however, that arguments made by lawyers were not evidence and that the jury was to disregard certain questions and exhibits to which the judge had sustained objections.

---

presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim." United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980) (citations omitted).  If Appellants' theory of the case was that BigPros resisted payment of a debt they had agreed to incur, they could have commenced an investigation to determine whether BigPros had engaged in such activity in the past.  There is some indication in the record that Davis' attorney knew generally of BigPros' credit problems before trial.  That Appellants did not further inquire into such activity until after they learned of Crockett's warrant, without more, does not amount to a Brady violation.

[2] Lee also objects to the government's reference to stopping corruption.  This argument is raised for the first time on appeal.  Even if raised properly in the district court, however, our analysis would remain the same.

5

"The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect." United States v. Fields, 72 F.3d 1200, 1207 (5th Cir.1996). The district court found the prosecutor's reference to a deceased police officer, although "improper" and "out of line," to be "minimally prejudicial." We afford considerable weight to the district court's "on-the-scene assessment of the prejudicial effect." Id. "For prosecutorial misconduct to warrant a new trial, it 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial,' and 'casts serious doubt upon the correctness of the jury's verdict.'" United States v. Wallace, 32 F.3d 921, 926 (5th Cir. 1994) (internal citations omitted).

Even assuming the government's closing argument to be improper, Lee fails to show the requisite prejudice. The district court's denial of the motion for a new trial was not an abuse of discretion.

*IV.*     *Application of Sentencing Guideline*s

Ordinarily, we review a district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. United States v. Washington, 340 F.3d 222, 230 (5th Cir. 2003). However, because Lee failed to object to the application of the guidelines in the district court, we review his claim for plain error. See United States v. Hoster, 988 F.2d 1374, 1380 (5th Cir. 1993). "Plain error is 'error so obvious that [this Court's] failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceeding and result in a miscarriage of justice.'" Id. (quoting United States v. Surasky, 974 F.2d 19, 21 (5th Cir. 1992)). In interpreting the guidelines, we are bound to follow the guidelines and the accompanying policy statements. United States v. Urias-Escobar, 281 F.3d 165, 167 (5th Cir. 2002). We afford controlling

6

weight to the guidelines' commentary unless it is plainly erroneous or inconsistent with the guidelines.

Id.

Lee contends that the district court erred in applying U.S.S.G. § 2B3.2 for Extortion by Force or Threat of Injury or Serious Damage because the threats complained of involved the fear of detention, not force or violence. In the indictment, Lee and Davis were charged with extortion "by the wrongful use and threat of the use of force, violence, and fear and under the color of official right." At the conclusion of the trial, however, the government submitted the case to the jury only on the theory of actual or threatened use of force, violence, or fear and obtained a conviction on that basis.[3] Thus, Lee's contention that the district court improperly applied U.S.S.G. § 2B3.2 for Extortion by Force of Threat of Injury or Serious Damage, rather than U.S.S.G. § 2C1.1 for Extortion Under Color of Official Right is without merit.

> The commentary to § 2B3.2 indicates that an individual may be sentenced under that guideline
>
> if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property, or any comparably serious threat...Even if the threat does not in itself imply violence, the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it. An ambiguous threat, such as 'pay up or else'...ordinarily should be treated under this section.

U.S. SENTENCING GUIDELINES MANUAL § 2B3.2, cmt. n.2 (2002). The conduct that Lee was convicted of falls within the ambit of this provision. At trial, the victims testified that they felt threatened by Lee and Davis. The district court did not err in applying § 2B3.2 to calculate Lee's base level offense.

---

[3] Lee also cites United States of America v. Box, 50 F.3d 345 (5th Cir. 1995), for the proposition that he should be sentenced under §2C1.1. Box, however, was convicted of extortion "under color of official right," and sentenced accordingly.

7

Lee also objects to the adjustment for Specific Offense Characteristics under § 2B3.2(b)(3)(A)(iii). Section 2B3.2(b)(3)(A)(iii) provides for a five level increase if a firearm was brandished or possessed. The evidence at trial established that Lee arrived at the hotel in full uniform, wearing his weapon, even though he was not on duty. Because Lee was in possession of a weapon, the district court did not err in applying the five level increase for possession of a firearm.

AFFIRMED.